Rachael L. Smiley (State Bar. No. 24066158)
Ekaterina G. Long (State Bar No. 24102700)
Luc J. Whyte (State Bar No. 24135117)
**FERGUSON BRASWELL FRASER KUBASTA PC**
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:     972-378-9115
rsmiley@fbfk.law
elong@fbfk.law
lwhyte@fbfk.law

**PROPOSED COUNSEL FOR DEBTOR IN POSSESSION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| POGO ENERGY, LLC, | § | Case No. 24-31524-mvl-11 |
| | § | |
| | § | Subchapter V |
| Debtor. | § | |
| | § | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDER
AUTHORIZING USE OF CASH COLLATERAL**

Pogo Energy, LLC ("**Debtor**"), files this *Emergency Motion for an Interim and Final Order Authorizing Continued Use of Cash Collateral* (the "**Motion**"). In support of the Motion, the Debtor incorporates by reference the *Declaration of Phillip Terry in Support of First Day Motions and Applications*, dated May 30, 2024 (the "**First Day Declaration**") as well as the *Declaration of Wayne Scott in Support of Debtor's Emergency Motion for an Interim and Final Order Authorizing Continued Use of Cash Collateral* ("**Scott Declaration**," attached hereto) and the *Declaration of Eric Milhizer in Support of Debtor's Emergency Motion for an Interim and*

*Final Order Authorizing Continued Use of Cash Collateral* ("**Milhizer Declaration**," attached hereto) and respectfully represents as follows:

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334(b). This Court can hear and determine this matter in accordance with 28 U.S.C. § 157 and the standing order of reference of bankruptcy cases and proceedings in this District. This matter is a core proceeding, and venue for this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## II. Factual Background

2. On May 30, 2024 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief in this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

3. The Debtor remains in possession of its property and is operating its business as a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4. As of this filing, the Subchapter V Trustee has not been appointed yet.

5. The Debtor is a certified Retail Electricity Provider ("**REP**") that provides electricity service to retail customers on a pay-as-you-go basis, and enabling customers to acquire quality electricity service without a contract commitment, credit check, deposit or any hidden fees.

6. A detailed description of the Debtor's business, capital structure, and the events leading to this chapter 11 case is fully set forth in the First Day Declaration and is incorporated herein by reference.

7. As more fully set forth in the First Day Declaration, V3 Capital Funding Group, LLC ("**V3**") provides the Debtor's credit facility, which enables the Debtor to place hedges and

purchase energy from the ERCOT[1] market for sale to its retail customers. In consideration thereof, the Debtor and V3 are parties to that certain Loan and Energy Services Agreement dated June 9, 2022, as amended from time to time, with all incorporated schedules and exhibits (collectively, the "**LESA**").[2] The LESA also includes certain Blocked Account Control Agreements that provide V3 with certain access and control over the Debtor's operating and controlled/lockbox revenue accounts.

8. In accordance with LESA, V3 contends that its debt is secured by liens on substantially all of the Debtor's assets as they existed as of the Petition Date (collectively, the "**Prepetition Collateral**"). The Debtor has an immediate need to use the cash identified in the Budget[3] (the "**Cash Collateral**") to operate their business.

9. V3 is the only entity having an interest in the Debtor's cash collateral. Its address is 1201 Louisiana Street, Suite 740, Houston, Texas 77002

10. The only entity having control or having possession of the Debtor's cash collateral is JP Morgan Chase Bank, NA, with an address of 1900 Akard 3rd Floor, Dallas, TX 75201.

11. As of the filing of this Motion, V3 has not consented to the use of its Cash Collateral.

### III. Relief Requested and Bases for Relief

12. The Debtor seeks authorization under §§ 105, 361, 363, and 507 of chapter 11 of

---

[1] Electric Reliability Council of Texas.

[2] The LESA and subject to confidentiality, but will be provided to the Court or filed under seal upon the request of the Court or parties in intrest.

[3] Attached as **Exhibit A** to the Scott Declaration.

title 11 of the United States Code (the "**Bankruptcy Code**") (i) to use cash collateral under Bankruptcy Code § 363; (ii) to provide adequate protection to V3 (as defined below) under §§ 361 and 363 of the Bankruptcy Code; and (iii) to schedule a final hearing (the "**Final Hearing**") under Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13. The Debtor's use of Cash Collateral is of the utmost importance to the preservation and maintenance of the value of the Debtor. The Debtor needs to use cash to operate its businesses in order to avoid immediate and irreparable harm to its estate. Cash Collateral provides the general funding for the Debtor's operations – specifically, the Debtor must have access to Cash Collateral in order to place hedges on the ERCOT deregulated market to purchase energy to sell to its customers. As of the Petition Date, the Debtor has approximately $113,342.00 in cash on hand, almost all of which is purportedly subject to a lien in favor of V3. The Debtor's business requires access to the income that the Debtor generates from the retail sale of prepaid electricity service inasmuch as the Debtor has determined, in its business judgment that it will be unable to operate generally, even for a limited period,[4] without use of such Cash Collateral.

14. Ultimately, the use of Cash Collateral on a final basis will maintain the going-concern value of the Debtor's business and improve the ability of the Debtor to facilitate an effective and timely reorganization by maintaining the going-concern value of its business by continuing to operate and provide electricity services to customers. Without such minimal financial accommodations, the hope of an effective reorganization (including a likely sale of the Debtor's assets) would be extremely jeopardized.

---

[4] The necessity of using Cash Collateral to make hedges, or advance purchases of energy, are described in detail in the Milhizer Declaration, attached hereto.

15. As is set forth herein, the Debtor respectfully submits that it has satisfied the requirements under § 363 for the use of cash collateral.

### A. Bankruptcy Code § 363 Allows a Debtor to Use Cash Collateral.

16. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if (i) those having an interest in such cash collateral consent, or (ii) the Court authorizes use of cash collateral. *See* 11 U.S.C §363(c)(2). Even with consent, Rule 4001 functionally requires there be an order approving the parties' agreement to use of cash collateral; accordingly, the Debtor requests authority to use Cash Collateral.

17. Use of cash collateral may be prohibited or conditioned, however, upon request by a party having an interest in such cash collateral as is necessary to adequately protect its interest. 11 U.S.C. §363(c)(3). The Court may authorize use of cash collateral upon a showing that those with an interest in the cash collateral are adequately protected. 11 U.S.C. §§363(c)(2)(B) and 363(e). Adequate protection requires consideration of the creditor's aggregate collateral position, not simply protection of its lien on cash or accounts.

18. Under Rule 4001(b)(2), a final hearing on a motion for authority to use cash collateral can be commenced no earlier than 14 days after service of the motion, but the Court may conduct a preliminary hearing before the 14-day period expires. In such a situation, the Court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

19. The relief requested is also appropriate under Bankruptcy Code § 105(a). Section 105(a) vests in the Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The continuing use of Cash Collateral will aid in the efficient administration of this case.

### B. Bankruptcy Code § 363(e) Requires Lenders to Be Adequately Protected.

20. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor-in-possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Adequate protection is not expressly defined in the Bankruptcy Code, except by the implications of the examples of adequate protection listed in section 361. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

21. The determination of adequate protection is fact-specific and made on a "case by case basis." *Swedeland*, 16 F.3d at 564; *see also In re Mathis*, 64 B.R. 279, 284 (N.D. Tex. 1986) (same). The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. *Id.*; *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to ensure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."). "However, neither the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties." *WorldCom, Inc.*, 304 B.R. at 619; *see also Swedeland*, 16 F.3d at 564.

### C. The Interim Order Satisfies Bankruptcy Code Requirements.

22. The relevant provisions of the proposed interim order (the "**Interim Order**") are as follows:

a) *Name of Each Entity with Interest in Cash Collateral*. V3 is the only entity having an interest in the Debtor's cash collateral.

b) *Use of Cash Collateral and Budget*. The Debtor intends to use the Cash Collateral (as defined below), on an interim basis, in accordance with the budget attached as **Exhibit A** to the Interim Order (the "**Budget**"). The Budget sets forth the particular expenses anticipated to be necessary to be paid from May 31, 2024 through August 30, 2024. The Budget includes a carve out for: (i) any fees required to be paid to the to the Subchapter V Trustee; and (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code pursuant to sections 328 and 1103 of the Bankruptcy Code in an aggregate amount not to exceed $325,000.

c) *Interim Basis*. The Debtor requests authority to use the Cash Collateral as provided in the Budget on an interim basis from the Petition Date through June 28, 2024 or entry of a Final Order following a Final Hearing, whichever is earlier (the "**Interim Period**"). The Debtor requests that the Final Hearing be set for the week of June 17, 2024. At the Final Hearing, the Debtor will request authority to use the Cash Collateral until such authority terminates (the "**Termination Date**") upon the earliest of: (i) 120 days from the Final Hearing, (the "**Expiration Date**") which date may be extended with the prior written consent of V3, without further order of the Court following the Debtor providing notice of the extension of the Expiration Date to the United States Trustee for the Northern District of Texas (the "**U.S. Trustee**"), the Subchapter V

Trustee, and counsel to V3; (ii) dismissal of the cases or the conversion of any of the cases to cases under chapter 7 of the Bankruptcy Code; or (iii) failure to adhere to the Budget or a subsequent Budget except with respect to those deviations and uses specified in the Interim Order. If no Final Order is entered on or before June 28, 2024, and provided that the Debtor files a supplemental interim budget, the Interim Period may be extended by agreement of the Debtor and V3 to a mutually agreeable date.

    d) *Adequate Protection*. The Debtor recognizes that V3 is entitled, pursuant to §§ 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Cash Collateral under the Agreements to the extent there is a diminution in value of such collateral from the Debtor's use from and after the Petition Date. To the extent that § 552 of the Bankruptcy Code does not apply to extend post-petition to V3's prepetition security interests with respect to a portion of the Cash Collateral, the Debtor grants V3 replacement liens in property acquired by the Debtor after the Petition Date, which is of the same nature, kind and character as the Prepetition Collateral (defined below), and all proceeds and products thereof solely to secure any diminution in the interest of V3 resulting from the use of the Cash Collateral; *provided, however,* the replacement liens will not encumber any claims or causes of action arising under chapter 5 of the Bankruptcy Code and all proceeds and products thereof. If and to the extent the adequate protection of the interest of V3 under the Interim Order proves insufficient, V3 will have, among other remedies, if any, determined by the Court, an allowed claim under § 507(b) of the Bankruptcy Code in the amount of any insufficiency.

  23. As set forth in the Budget, the Debtor is projecting it will generate post-petition receivables in excess of projected expenditures during most months of the budget period, thereby enhancing V3's collateral position post-petition. Based on recent performance, it is anticipated that

the Debtor's monthly disbursements. The Debtor submits that, under the circumstances, such terms and conditions are fair and reasonable, and adequately protect V3 from any diminution of its interests in the Cash Collateral resulting from use. Payment of the expenses identified on the Budget is necessary to avoid immediate and irreparable harm to the estate pending opportunity for a final hearing. The limited interim use of the cash collateral is vital to maintaining the value of the Debtor's assets and the going-concern value of its business.

24. The Debtor believes that any interim relief granted on the Motion will be without prejudice to the rights of parties in interest at a final hearing on the Motion.

## IV. Notice

25. Notice of this Motion will be provided to: (a) the United States Trustee for the Northern District of Texas; (b) the Subchapter V Trustee, when appointed; (c) V3; (d) the twenty largest unsecured creditors of the Debtor, and (e) the Internal Revenue Service and other governmental entities listed on the attached service list. The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtor respectfully requests entry of the Interim Order, pending entry of a Final Order or the Interim Order becoming a Final Order: (i) authorizing the Debtor to use Cash Collateral post-petition in a manner consistent with the Budget attached as Exhibit A to the Interim Order; (ii) decreeing that, notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of the Interim Order shall be immediately effective and enforceable upon its entry, and (iii) granting such other and further relief as is just and proper. The Debtor also requests that, upon entry of the Interim Order, the Court schedule a Final Hearing on the Motion the week of June 17, 2024 to consider the relief requested herein on a final basis.

Respectfully submitted: May 30, 2024     **FERGUSON BRASWELL FRASER KUBASTA PC**

By:    /s/ *Rachael L. Smiley*
Rachael L. Smiley (State Bar. No.24066158)
Ekaterina G. Long (State Bar No. 24102700)
Luc J. Whyte (State Bar No. 24135117)
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Phone: 972-378-9111
Fax:    972-378-9115
rsmiley@fbfk.law
elong@fbfk.law
lwhyte@fbfk.law

**PROPOSED COUNSEL FOR DEBTOR IN POSSESSION**

## Certificate of Service

      I certify that on May 30, 2024, a copy of the foregoing document was served electronically on the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and, by email and/or US Mail upon the parties listed on the attached service list, as well as to V3 the address(es) below:

    V3 Capital Funding Group, LLC
    Attn: Leam Nelson, General Counsel
    1201 Louisiana Street, Suite 740
    Houston, TX 77002
    legal.notices@v3cg.com

                                                    */s/ Rachael L. Smiley*
                                                    Rachael L. Smiley

## Certificate of Conference

      The undersigned certifies that on May 30, 2024, I communicated with representative for V3, via email concerning the relief requested in the foregoing Motion. Such representatives did not respond in time for the filing of this Motion; however, the Debtor will to continue to work toward an agreement in advance of the hearing on this Motion.

                                                    */s/ Rachael L. Smiley*
                                                    Rachael L. Smiley